## F. F. PARKER & WIFE v. G. Y. COOK.

SUPREME COURT, AUSTIN TERM, 1882.

*Homestead—Designation before levy.*—That the homestead was not designated before the levy of attachment, is not ground for setting the levy aside; and a purchaser in good faith may rely upon the real title being where by the deed it appears to be.

*Land purchased during coverture,* whether the deed be to the husband or wife, is presumed community property, if the deed does not indicate to the contrary. If there be a difference it should be in favor of the wife, for it is by construction only that property conveyed to the wife is held to be community property.

*Resulting trusts,* are not subject to registration in this State; and a *bona fide* purchaser, for value and without notice, is as much protected in equity as under registration laws.

Appeal from Coryell County.

The Opinion sufficiently states the facts.

Opinion by Stayton, J.

The fact that the homestead was not designated before the levy of the attachment, furnishes no ground for setting the levy aside. The

judgment protects the homestead claim and gives the appellants the right to designate it in the manner that the law permits such designation to be made.

This furnishes to the appellants full protection in so far as the homestead is concerned.

The record evidences that the land levied upon was acquired by exchange for two other tracts of land, one of which was the separate property of the wife, and the other community property.

The deed to the land attached, was made to the wife during coverture, and recites that the purchase money was paid by her; but there is nothing in the deed showing that the purchase money was paid by the separate means of the wife, nor that the land was conveyed to her in her own separate right. It has been settled by a line of decisions in this State, that as against a purchaser for value from the husband, or through an execution against him, without notice of the right of the wife, she will not be permitted to hold the land upon proof that the same was bought with her separate means, or was a gift to her from some other person, unless there be that in the deed, which will put such purchaser upon inquiry as to her separate right in the property, and this even though the deed to the land be made to *her* during coverture.

Cook v. Bremond, 27 Texas, 459.

French v. Strumberg, 52 Texas, 109.

The same rule has been applied in case of a mortgage of land by the husband, which had been deeded to the wife during coverture, by a deed reciting that the purchase money was paid by her, which however, did not recite that the purchase money was the wife's separate property. Kirk v. Navigation Company, 49 Texas, 215, and this even though the land was bought with the separate means of the wife.

These cases all proceed upon the theory that the purchaser in good faith may rely upon the real title being where by the deed it appears to be, and that he or she who wilfully or negligently permits property to stand in the name of another person at least as apparent owner, cannot be heard to say that such is not true to the prejudice of a person who, relying upon the apparent ownership, has bought and paid a valuable consideration for the land.

As has been often said, land purchased during coverture, whether the deed be made to the husband or the wife, is presumed to be

communty property, if there be nothing in the deed to indicate to the contrary. This is now certainly the law in this State, and it is now too late to inquire whether or not, from the fact that deeds are not ordinarily made to married women, unless there be an intention thereby to convey to her a separate estate, or unless her separate property is the consideration, it would not have been better to have held, that, where deeds were so made it was the duty of a purchaser to made inquiry as to the real ownership.

It cannot be denied that the enforcement of the rule, in many cases, operates harshly upon the interests of married women, where their separate means have been invested in lands, though deeds not containing recitals held sufficient to put purchasers from husband upon notice of the separate rights of the wife; and it may place the wife in a more unfavorable attitude than her dependent relationship to her husband would justify.

Be this as it may, such is the established rule. The question in this case is: Does an attaching creditor, of the community, or one who through operation of law has acquired an apparent lien upon land which has been purchased in whole or in part with the separate means of the wife, occupy such position as precludes the wife from proving the facts and thereby having protection to the extent of her interest?

This question we are of the opinion must be answered in the negative. There is nothing in the relation of husband and wife which should place her in a more unfavorable position, with reference to her right to assert and maintain her right to her separate property than are other persons under the same circumstances.

If a deed to land is made to A., in the absence of something upon its face to indicate that he holds in trust for some other person, by reason of such other person having paid the purchase money, or from some other reason, the law presumes, and persons dealing with A. in reference to such property, may, in the absence of notice to the contrary, rely upon the title being as it appears upon the deed; yet it is well settled if a judgment lien is acquired when the land through a judgment against A., or through an attachment levied upon the land for his debt, that a person who is the real owner of the land by reason of his money having been paid for the land, may show such facts and defeat the lien or passing of title, if the same be done before sale; and this, upon the theory that the title of the

real owner, comes through operation of law, which creates a resulting trust in his favor, which is the superior title, and not affected by registration laws, which in many cases gives protection not only to purchasers, but to creditors also, who have acquired liens.

The law presumes that land conveyed to either the husband or wife during marriage, is community property, nothing to the contrary appearing in the deed by which the conveynnce is made; but certainly not more conclusively is, than it presumes, that land conveyed to A. belongs to him; and in the one case, as in the other, we see no reason why the facts may not be shown and protection given if justified and called for by the facts.

To the mind of the writer, if there be a difference it should be in favor of the wife, for it is only by construction that property conveyed to a wife is held to be *prima facie* community property, between the husband and wife and those taking by descent from either of them the facts may be shown and the superior title determined thereby, as may be done between other persons, the right of third persons not having attached. Whatever right Mrs. Parker has results from the fact that one hundred and three acres of the land, which was given in exchange for the land attached, was her separate property, and this creates a resulting trust in her favor, in the land so acquired, in proportion to the value which her land so exchanged sustains to the value of the whole of the land given in exchange.

That resulting trusts are not subject to the registration laws, is not an open question in this State. Blankenship v. Douglass, 26 Texas, 227; Grace v. Wade, 45 Texas, 532; Obertheir v. Stroud, 33 Texas, 522; Guster & Co. v. Lambeth, decided at present term; and the rights of the parties must be determined by an application of the general principles of equity, unaffected under the facts of this case by the laws of registration, which by their terms as against unregistered conveyances secure not only to purchasers, but also to lien creditors' rights, which they would not otherwise have.

The *bona fide* purchaser, *i. e.*, one who pays value and has no notice of adverse right, is as much protected in equity as under registration laws; but under registration laws, which protect lien creditors who have no notice of adverse rights at the time their lien attaches, persons may be protected as purchasers who are not *bona fide* purchasers as these terms are ordinarily used; this however, is incidental to the protection given to the creditor and for his benefit;

otherwise no protection would be given to the creditor unless he became the purchaser, which would operate a great hardship upon both debtor and creditor as it would destroy competition in bidding, and besides compel the creditor to take property for his debt when he is entitled to money.

Then the contest is between the holder of the equitable title, resulting from the fact that her separate property in part paid for the land, and the attaching creditor. In the case of Blankenship v. Douglass, the land had been seized under execution, which gave a lien upon the land as effective as could the levy of an attachment, but as notice of the resulting trust in favor of David Blankenship was given before the sale, it was held that the purchaser took no title as against him. In disposing of the case it was said: "It seems to be well settled that a judgment lien on the land of a debtor is subject to every equity which existed against the lands in the hands of the judgment debtor at the time of the rendition of the judgment. And courts of equity, it is said, will protect the equitable rights of third persons against the legal lien and will limit that lien to the actual interest which the judgment debtor has in the estate. * * * * If the property in controversy was purchased by John J. Blankenship, with the funds of David Blankenship, and for him, then the equitable estate in the lands was in David Blankenship, and upon proof of the facts the land might have been sold under execution for the debts of David Blankenship. * * * This kind of an equity is beyond the contemplation of our statute of registration respecting the rights of creditors."

This case was considered and approved in the case of Grace v. Wade, 45 Texas, 525, 532; and Obertheir v. Stroud, 33 Texas, 522; Gurter & Co. v. Lambeth, (decided at present term.) We are referred to the case of Wallace v. Campbell, 54 Texas, 87, in support of the ruling of the court below; and upon the authority of that case, this, seems to have been decided.

In that case as reported, it appears that the property which the wife claimed was paid for with community funds. If so, the case stands upon different grounds to that now before us; for if the purchase money was paid with community funds, the subsequent credit given by the husband to himself, on a debt due to his wife from him, could not have the effect of changing the title to the land from the community to the separate estate of the wife; for such subse-

quent transaction could not create a resulting trust in favor of the wife.

The rule is thus tersely stated : "The trust must result, if at all, at the instant the deed is taken, and the legal title rests in the grantee. No oral agreements, and no payments, before or after the title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes, that a trust will result from the transaction itself." Perry On Trusts, 133. To which in note 3 there is a full citation of authorities. Lacy v. Clements, 36 Texas, 661, is to the same effect.

Thus considered, the case of Wallace v. Campbell, is not in conflict with Blankenship v. Douglass, and the decisions following that case; but if the money became the separate property of Mrs. Campbell, before or at the time it was paid for the land, then the decisions could not be reconciled, and we would feel bound upon authority and principle to follow the former line of decisions.

There is nothing in the relation of husband and wife under our system, which recognizes the right of each to hold separate estate without the intervention of a trustee, and at the same time for them to hold an estate in which they have a common interest, which prevents the husband, or the community from holding in trust for the wife in any case in which under settled rules, a resulting trust in her favor would exist, were the apparent title in some other person.

In speaking of the capacity of the wife to hold in trust for the husband contrary to the rule when marital rights and powers are determined by the common law, in the case of Smith v. Strahan, 16 Texas, 321, Hemphill, Ch. J., said : "But this principle has little or no force under our system of laws and of marital rights. The rights of the wife, under our laws, to hold property is co-equal with that of the husband ; and upon evidence it may be shown that property in the name of one is held for the benefit of the other. * * * * At all events, where the fundamental principle of the marital relation is, that whatever may be the unity of persons, there is no unity of estates; there can be no such rule as that a wife cannot be a trustee for the husband, in any sense which would preclude evidence showing that, although property is in her name, it was intended for the benefit of the husband."

In that case the defendant was setting up a resulting trust in his favor against a deed made to the wife during coverture. The regis-

tration laws not applying, no good reason is seen why the wife may not do so against a creditor, who claims a lien upon land by levy of an attachment on land held by a deed apparently passing title to the community, if in fact the land was paid for with the separate means of the wife.

The judgment of the court below is erroneous and will be reversed and the cause remanded with instructions to the court below :

1st. To enter judgment for the appellee for the amount of the debt claimed by him.

2nd. To have the homestead of the appellants to the extent of two hundred acres set apart to them, the title thereto to stand affected as between the appellants, by their respective equities growing out of the means of the respective parties with which the same was purchased.

3rd. To have the interest of Mrs. Parker set apart, and vested in her by decree. from the residue of the land, unsold at the time the attachment was levied, she to have such proportion as the land which was her separate property, bore in value to the entire land which was given in exchange for the land in controversy.

4th. That the attachment lien be foreclosed upon such part of the land as remains after the homestead and the share of Mrs. Parker are taken from the entire tract unsold at the time the attachment was levied, the land sold before the attachment was levied to be in no manner considered in the partition.

5th. That F. F. Parker pay all costs of the court below including such costs as may be incurred in partition, and it is accordingly so ordered.

Reversed and remanded.