LETITIA G. McKAMEY ET AL. v. P. THORP ET AL.

(Case No. 5190.)

1. PLEADING IN TRESPASS TO TRY TITLE.— Evidence in defendant's behalf of fraud in the acquisition of title by plaintiff, or that his title had failed on account of a sale made to an innocent purchaser without notice, may be admitted in trespass to try title under the plea of *not guilty;* under that plea any other defense that will prevent the plaintiff's recovery may be heard, except that based on the statute of limitations, which must be specially pleaded.

2. RESULTING TRUSTS — BONA FIDE PURCHASERS.— A conveyance of real estate was made by a third party to the wife, which was paid for by the husband, in pursuance of an agreement between them, under which the husband had used the separate funds of the wife, to repay which the deed was made. *Held:*

(1) That if the money, while in the husband's hands, remained the property of the wife, the creditors of the husband had no claim on it, and it would follow that its investment in land, title to which was made in the wife's name, during coverture, could not be a fraud on their rights.

(2) When such a deed failed to recite that the purchase money was the separate property of the wife, or that the conveyance was for her sole and separate benefit, though the deed was in her name, the legal title vested in the community of herself and husband, but she remained the equitable owner, a resulting trust being created by the use of her money in the purchase of the land.

(3) Such a resulting trust is not within the registration laws, for the claimant of the equity cannot spread the evidence of it on the record. Under the operation of the registration laws, when an execution lien attaches by levy, without notice of an unrecorded conveyance previously made, the purchaser acquires title as against such former purchaser or creditor, though he may have had notice afterwards at the time of his purchase at execution sale. Citing Parker *v.* Coop, 60 Tex., 111.

(4) But a creditor, claiming a mere statutory lien by judgment or execution against the husband, in whom the apparent title is vested, though with a resulting trust in favor of the wife, cannot be protected by his lien, having notice at any time before purchase of the resulting trust. Otherwise as to a creditor of the husband, who obtains from him, without notice, a mortgage or deed of trust on the property.

(5) A judgment creditor of the husband, buying property at execution sale under execution against the husband, the apparent title to which is vested in the community, but with a resulting trust in favor of the wife, though he purchases with no notice of such resulting trust, cannot be a purchaser for value if the amount of his bid is credited on the execution. He acquires no title as against the equity of the wife.

(6) The Revised Statutes, art. 2318, provide that "a purchaser under execution shall be deemed an innocent purchaser, without notice, in all cases where he would be deemed to be such had the sale been made voluntarily by the defendant in person." One who buys at a voluntary sale from his debtor and pays no money, but credits the amount of the consideration on the pre-existing debt, is not a *bona fide* purchaser for value. Citing Dickerson *v.* Tillinghast, 4 Paige Ch., 221–2, and other cases.

3. Cases cited and reviewed.— Parker *v.* Coop, 60 Tex., 111; Blankenship *v.* Douglas, 26 Tex., 225; Wallace *v.* Campbell, 54 Tex., 90, 91; Ayers *v.* Duprey, 27 Tex., 594, and Dickerson *v.* Tillinghast, 4 Paige Ch., 221–2, reviewed.

Appeal from Hood.  Tried below before the Hon. T. L. Nugent.

Letitia G. McKamey, joined by her husband, Wm. N. McKamey, sued appellees P. Thorp *et al.* in trespass to try title to a house and lot at Thorp's Spring.  Plaintiffs alleged that the lot was the separate property of the wife.  Defendants answered by general demurrer and not guilty.  Judgment that plaintiff take nothing, etc.

The property in question was paid for out of Mrs. McKamey's separate means, held by her husband for her and which was inherited, in the land, and the deeds from Walker and wife taken to her with the intent of vesting the title in her in her separate right.

The defendants, over the objections of plaintiff, proved many facts tending to show the insolvency of Wm. N. McKamey, husband of the plaintiff L. G. McKamey, his indebtedness, evasion and delay of creditors, etc.  Defendant claimed title through a judgment and execution sale, wherein H. J. Thompson was plaintiff and Wm. N. McKamey was defendant, and Thompson, through his attorneys, McCall & McCall, became the purchaser, crediting the sum bid on the execution.

*Thomas T. Ewell,* for appellants.

*McCall & McCall,* for appellees, cited: Parker *v.* Coop, 61 Tex., 111; Wallace *v.* Campbell, 54 Tex., 87; Kirk *v.* Navigation Co., 49 Tex., 215; Cooke *v.* Bremond, 27 Tex., 459; Leading Cases in Equity, vol. 2, pp. 109, 110.

Willie, Chief Justice.— The court did not err in admitting the testimony referred to in the first and second assignments of error. Our Revised Statutes provide that any defense to an action of trespass to try title may be given in evidence under the plea of not guilty, except the statute of limitations, which must be specially pleaded.  The testimony was offered to show fraud in the acquisition of title to the land by Mrs. McKamey, and that Thompson was an innocent purchaser without notice; either of which facts, if available as defenses, were as admissible under the pleas of not guilty as under an answer in which they were specially relied on.

The judge below, to whom the cause was submitted without a

jury, has not placed his conclusions of fact and law upon record, and we are not, therefore, informed as to the grounds upon which his judgment in favor of the appellees was based.

There seems to be no evidence in the record to show that the deed to the land was taken in Mrs. McKamey's name for the purpose of defrauding the creditors of her husband. On the contrary, the whole evidence tends to show that she had inherited property from her father's estate, which had been converted into money and turned over to her husband, and of which he had had the use for many years; that it was the understanding between McKamey and his wife that this money was to be invested in property for her benefit, and that accordingly a portion of it was used in the purchase of the premises in controversy. If the money remained the property of Mrs. McKamey whilst in the hands of her husband, his creditors had no claim upon it, and to invest it in property for her benefit was no fraud upon their rights. If the transaction resulted in his becoming her debtor, it was entirely legal and proper for him to pay the debt, either wholly or in part, by purchasing the premises and having the title made directly to her.

The deed to Mrs. McKamey did not recite that the purchase money was her separate property, or that the conveyance was for her sole or separate use or benefit, or any other fact which gave notice of her ownership of the land described in it. By its terms the legal title to the land was placed in the community of herself and husband, but her money having paid for it, a resulting trust was created in her favor, and she became the equitable owner of the property.

The land was afterwards levied on and sold under an execution against McKamey, in favor of Thompson, the latter becoming the purchaser and paying for the land by crediting the amount of his bid upon the judgment on which the execution had issued.

There is no proof that Thompson had any notice of Mrs. McKamey's title or claim to the land, either at the date of the levy of the execution or of the sale at which he purchased.

The evidence introduced by the plaintiffs below to show such notice was not only meager and insufficient, but was contradicted by the testimony of the opposite party. Even had it been stronger, if thus contradicted, we should be compelled to treat the case as lacking in proof of notice, the judge below having found against the party upon whom rested the burden of making such proof. In the decision of this case, therefore, Thompson must be treated as having bought without knowledge of Mrs. McKamey's title, paying the

purchase money by crediting it upon his judgment against her hus-band.

The defendants, who claim under Thompson, had full notice of her rights before they bought, and their title must stand or fall with that which was acquired by Thompson through his purchase at the sheriff's sale.

It is the well settled law of this court that an execution lien will hold good as against an unrecorded conveyance previously made to a third party by the judgment creditor. Ayers *v.* Duprey, 27 Tex., 594; Grace *v.* Wade, 45 Tex., 522; Borden *v.* McRae, 46 Tex., 396; Parker *v.* Coop, 2 Tex. L. R., 22 (60 Tex., 111); Grimes *v.* Hobson, 46 Tex., 416. Hence, where such a lien has been secured without notice, the purchaser at the sale made under the execution is pro-tected in his title, whether he have knowledge of the unrecorded instrument at the time of his purchase or not. Id.

This is by force of the registration laws, which render all unre-corded conveyances void as against subsequent purchasers for value without notice, and as against all creditors, the latter being con-strued to be those who have liens upon the property. Id.

In such cases the purchaser at sheriff's sale, whether plaintiff in ex-ecution or not, has the benefit of the lien secured by the levy, and no notice received thereafter will affect his title. Id.

But as a resulting trust is not within the registration laws, and the holder of this equity cannot spread his title upon record, these rules are inapplicable to his case. Parker *v.* Coop, 60 Tex., 111. Hence a creditor claiming a mere statutory lien by judgment or ex-ecution has been held by this court not to be protected by reason simply of want of notice of such an equity; although it is other-wise in reference to a creditor by mortgage or deed of trust, or similar instruments, which are regarded as standing upon the same footing with conveyances by deed. Id.; Bailey & Pond *v.* Tindell, 2 Tex. L. R., 141; 2 Story's Eq. Jur., sec. 1502, note 2. Hence, also, an execution or judgment lien, obtained without notice of the result-ing trust, cannot inure to the benefit of one buying at the sheriff's sale made under the execution. Parker *v.* Coop, *supra.*

The title of the latter as against the resulting trust must be de-termined without reference to any notice of it at the time of the record of the judgment or the levy of the execution. It must de-pend upon whether or not he had notice at the time of sale, and if not, then whether or not he was a purchaser for valuable consider-ation.

As Thompson bought the property in controversy without notice

of Mrs. McKamey's title, the only question for our decision is: Was he a purchaser for valuable consideration, having paid the amount of his bid by crediting it upon his judgment against the defendant in execution?

A review of our decisions will show that in a few cases intimations have been made to the effect that one buying under such circumstances is to be treated as a *bona fide* purchaser, and that in other cases the rule has been distinctly laid down to the contrary.

In Blankenship *v.* Douglas, 26 Tex., 225, an intimation was thrown out to the effect that a creditor thus buying was a *bona fide* purchaser, but it was added that it was not intended to express any authoritative opinion upon the point.

In Wallace *v.* Campbell, 54 Tex., 90, 91, it was said that such a purchase might be *bona fide* when a previous judgment or execution lien had been secured upon the property sold. The creditor would then hold through his previous lien and not merely through his purchase at the judicial sale.

It may be also remarked that in such case a purchaser surrenders an existing security, viz., the previous lien of his judgment or execution, and this is held equivalent to the payment of a valuable consideration. Love *v.* Taylor, 26 Miss., 574; Padgett *v.* Lawrence, 10 Paige Ch., 179. It is obvious from this that where there is no such prior lien acquired, as in case of a resulting trust, the foundation of the creditor's title through the purchase at sheriff's sale is removed and the title itself must fall. These decisions are, therefore, not authority for holding that a judgment creditor, purchasing at his own sale, without any previous lien acquired upon the property, is a purchaser for valuable consideration.

On the contrary, in Ayers *v.* Duprey, 27 Tex., 594, it was held that "it will not constitute a *bona fide* purchase that the creditor bids off the premises and applies the bid on his own judgment. That is a precedent debt, and the consideration is not advanced upon the faith of the judgment." Whilst this point was not necessary to a decision of the cause, it was raised by the record and passed upon by the court. In the subsequent case of Delespine *v.* Campbell, 52 Tex., 12, the doctrine on this subject as stated in Ayers *v.* Duprey, is approved and followed.

The decided tendency of our decisions seems, therefore, to be in favor of the doctrine that a creditor buying at his own sale and crediting his bid upon the judgment is not a purchaser for value. And this view seems to be supported by very high authority. 1 Story's Eq., sec. 420, note 3, and authorities cited.

Our Revised Statutes, under which this case must be decided, provide that "a purchaser under execution shall be deemed to be an innocent purchaser without notice in all cases where he would be deemed to be such had the sale been made voluntarily by the defendant in person." Art. 2318.

We have, therefore, only to inquire in what cases a purchaser from a defendant in execution at private sale is deemed a *bona fide* purchaser, in order to determine when he will be so considered when buying at sheriff's sale.

It seems to be held by the great weight of American authority that a creditor who buys from his debtor, and pays the consideration money by merely crediting the amount upon a pre-existing debt, is not a *bona fide* purchaser for value. Dickerson *v.* Tillinghast, 4 Paige Ch., 221, 222; Padgett *v.* Lawrence, *supra;* Upshaw *v.* Hargrove, 6 Sm. & Marsh., 292; Clark *v.* Flint, 22 Pick., 243; Buffington *v.* Garrish, 15 Mass., 156.

This doctrine proceeds upon the principle that the creditor receiving the conveyance divests himself of no right, and places himself in no worse situation than he would have been if he had received notice of the prior title existing in the property in favor of a third party. He is treated as advancing nothing on the faith of his purchase, and as losing nothing if the apparent title of his vendor should prove worthless. Dickerson *v.* Tillinghast, *supra;* Wright *v.* Douglass, 10 Barb., 107.

As a natural result of this principle, if a valid security, such as a mortgage or judgment lien, is surrendered, or in addition to the precedent debt a new consideration is advanced, or new liabilities are incurred, the purchase will become *bona fide.* Love *v.* Taylor, *supra;* Padgett *v.* Lawrence, *supra.* And in most of the American courts the purchaser of negotiable paper is held not to be within the rule; but this arises from considerations pertaining to mercantile law alone and the necessities of commerce, which require that such paper should pass from hand to hand more freely than any other species of property. Swift *v.* Tyson, 16 Pet., 1; Brush *v.* Scribner, 11 Conn., 388.

None of these exceptions are of course applicable to a purchase, like the present, of land by a creditor who has advanced no new consideration, surrendered no security, but merely credited the consideration money upon a larger indebtedness held by him against his debtor.

From the decisions made by this court previously to the Revised Statutes, the principles upon which they rest, and the authorities

cited to sustain them, it would seem that the article of our statutes cited above is but declaratory of the law as it already existed.

In any event it cannot be said that in placing execution sales upon the same plane with private conveyances made by the debtor, the statute has given the creditor purchasing any better position than he before possessed. For it is sometimes held that an execution creditor purchasing at his own sale, and crediting his bid on the judgment, may be a *bona fide* purchaser, when, if he had received a conveyance voluntarily from the debtor for the same consideration, he would not have occupied that position. Compare Dickerson *v.* Tillinghast, *supra*, with Wood *v.* Chapin, 3 Kern., 509.

Indeed there may be some reason for the difference, as the purchaser at sheriff's sale must needs pay a portion of his bid in settlement of the expenses of the cause, which the private purchaser does not; and in addition it is the policy of the law to encourage the judgment creditor to bid at his own sale and thus create competition, and cause the property to bring a larger price for the benefit of the debtor. But be this as it may, the statute places both classes of purchasers upon the same footing, and a purchaser at sheriff's sale cannot be protected unless the law would also shield him had he bought privately from his debtor, the defendant in execution.

Thompson was not, therefore, a *bona fide* purchaser of the property in controversy, and his vendees, the defendants, having bought with notice of Mrs. McKamey's claim, judgment should have been rendered for the plaintiffs below. The judgment is therefore reversed, and will be rendered here in favor of the appellants that they recover the land sued for, and their costs, and have their writ of possession against the appellees.

REVERSED AND RENDERED.

[Opinion delivered May 27, 1884.]