SINSHEIMER, LEVENSON & CO. v. CLARA KAHN ET AL.

No. 104.

**1. Community Property.**—All property acquired during the marital relation is prima facie community property, and it devolves upon the wife to prove that property conveyed to her husband, or to herself, without designating it as her separate property, has been purchased with her separate means. Edwards v. Brown, 68 Texas, 320.

**2. Same — Purchaser for Value.** — A purchaser of the wife's separate property for value from the husband, or through execution against him, will be permitted to hold it against the wife, unless there be recitals in the conveyance to her of it to put him upon notice as to her separate interest. Cook v. Bremond, 27 Texas, 459.

**3. Same.**—Lots bought by a wife, deed taken to them in her name, part of the purchase money paid cash out of her separate estate, and notes executed by her for the balance, are not subject to attachment for husband's debts. Ullman v. Jasper, 70 Texas, 452.

**4. Same — Trial Amendments — New Causes of Action.** — A trial amendment which alleges, that since the filing of the suit the wife's mother had paid off the notes, and made a gift of them with a release of the vendor's lien to her, *Held*, did not set up a different title to the lots than existed at the time of levy of the attachment. It was the wife's equitable title in the lots that the suit was instituted to protect, and it was merged into a legal title by the payment of the notes.

ON REHEARING.

**5. Wife's Separate Property.**—When the wife buys a tract of land, it is not necessary that she pay all of the purchase money cash, or must have a reserve fund with which to pay it. The fact that she paid a part cash out of her separate means, and executed her notes, signed by her and her husband, for the balance, is sufficient to make the property her separate property.

APPEAL from Bexar. Tried below before Hon. W. W. KING.

*A. Lewy,* for appellants.—1.  Real estate purchased by a married woman upon a credit is community property, unless such credit is made and obtained upon the faith of her existing separate property sufficient to pay off the indebtedness; otherwise the only interest she can claim in such property so purchased is the amount paid by her in cash from her separate estate.  Parker v. Coop, 60 Texas, 112; Epperson v. Jones, 65 Texas, 425; Cleveland v. Cole, 65 Texas, 402; Smith v. Bailey, 66 Texas, 553; Ullman v. Jasper, 70 Texas, 446; Shuster v. Bauman Jewelry Co., 79 Texas, 179; Heidenheimer Bros. v. McKeen, 63 Texas, 229.

2.  The subsequent appropriation of land after attachment can not protect it from the lien acquired, or affect the interest or title in the land secured by such attachment.  Tuttle v. Turner, 28 Texas, 773; Patshinsky v. Krempkau, 26 Texas, 309; Taul v. Epperson, 38 Texas, 492; Mabry v. Harrison, 44 Texas, 294; Grace v. Wade, 45 Texas, 523; Baird v. Trice, 51 Texas, 559; 1 Story Eq. Jur., secs. 405, 406; Drake on Attach., secs. 218, 221, 226, 233.

*Simpson & James* and *Shook & Vander Hoeven,* for appellees.—1.  When a married woman's separate funds are invested in property, such property becomes her separate property to the extent that her separate funds are invested therein, if capable of identification; and where land is purchased on credit, and the cash payment is of her funds, it can not be doubted that if she should at any time acquire the legal title, either by means of her separate funds, or through gift, devise, or descent, then the property is hers absolutely, and the possibility of title thereto in her husband has ceased to exist.  Smith v. Bailey, 66 Texas, 554; Cleveland v. Cole, 65 Texas, 402; Phillipowski v. Spencer, 63 Texas, 609; Bank v. Weems, 69 Texas, 499; Marx v. Lange, 61 Texas, 547; Platt's Prop. Rights of Marr. Women, 22–29; Ullman v. Jasper, 70 Texas, 446; Shuster v. Bauman Jewelry Co., 79 Texas, 179; McBride v. Banguss, 65 Texas, 179.

2.  If suit is brought on an equitable or inchoate title, such title may be perfected into a legal title pending the proceedings, and does not transgress the general rule, that plaintiff in suit for land can not make use of a title acquired subsequently to the commencement of the suit.  The rule referred to seems to apply to a title entirely independent of the right plaintiff had when he filed his action, and not one dependent upon it.  Bradford v. Hamilton, 7 Texas, 57; Collins v. Ballow, 72 Texas, 330; Pitts v. Booth, 15 Texas, 453.

FLY, Associate Justice.—On January 28, 1891, appellee Clara Kahn, joined pro forma by her husband, A. Kahn, filed suit against appellants, alleging that she was the equitable owner of certain lots of land in the

city of San Antonio; that she purchased the same from E. D. L. Wickes on May 1, 1890, the consideration being $600 in cash, which was paid by said Clara Kahn out of her separate property, and certain notes executed by her for $2400, which notes had not been paid, and that a lien had been retained by the vendor on said lots to secure the payment of said $2400; that the deed to her did not state that the property was her separate estate. It was further alleged, that appellants had sued her husband, A. Kahn, and had levied a writ of attachment on said lots; that the attachment was a cloud upon her title; that the property was not subject to the debts of her said husband, but was her separate estate. There was prayer that the levy be cancelled, and that appellants be restrained from further prosecuting said levy.

Appellants answered by special exceptions and by general denial, and specially pleaded A. Kahn's indebtedness to them, and that the property was community estate of Clara Kahn and A. Kahn.

Appellees afterwards filed a trial amendment, alleging that since the institution of the suit Fanny Josey, the mother of Clara Kahn, had with her own money taken up the vendor's lien notes, and had made a gift of the notes and a release of the lien to said Clara Kahn. This trial amendment was demurred to, because it set up a different cause of action than existed at time of levy of attachment, and because the amendment did not state that at the time of the purchase of the lots that Clara Kahn had sufficient money to pay the balance of the purchase money, or that she expected to pay the same from her separate estate, or that she had a separate estate sufficient to pay the same. Verdict was for appellee Clara Kahn.

We conclude the following facts were established by the evidence:

1. That on the 1st day of May, 1890, E. D. L. Wickes, through his attorney in fact, Henry Laager, conveyed by warranty deed to Clara Kahn the lots in controversy, being lots 1, 2, and 3 in block number 10 of a subdivision lying between San Pedro Avenue and what was formerly known as the Bracket property, the consideration being $600 cash and $2400 in three notes, each for $800, payable respectively in one, two, and three years from date, each bearing interest from date, the vendor's lien being specially retained on said lots to secure the payment of said notes.

2. That this deed was made to Clara Kahn without any mention of it being the separate property of said Clara Kahn.

3. That the $600 payment made at the time of the purchase was the separate property of said Clara Kahn.

4. That on the 26th day of February, 1891, E. D. L. Wickes, in propria persona, transferred the three vendor's lien notes herein before described to Mrs. Fannie Josey in consideration of the sum of $2560 paid by her, and in the same instrument, which was properly acknowledged

and recorded, granted and conveyed to said Mrs. Josey his superior vendor's title to the lots herein before described.

5. That said notes were paid off by Mrs. Fannie Josey, who was the mother of appellee Clara Kahn, out of her own money, which she had realized out of the sale of her property.

6. That on March 11, 1891, after the levy of the attachment on the lots, said Fannie Josey made a deed of gift of the notes and the title she had in the land to Clara Kahn, which was properly executed, acknowledged, and recorded.

7. That appellants had a valid and subsisting judgment against A. Kahn, the husband of Clara Kahn, dated March 18, 1891, for the sum of $1217.86, with a foreclosure of an attachment lien on all the interest that A. Kahn had in the three lots in controversy at the time of the levy or since the time of the levy of the attachment, to-wit, on January 2, 1891.

8. That the lots were worth at the time of the trial the sum of $4500.

9. That said lots were not community estate, but the separate property of said appellee Clara Kahn.

Our conclusions of law, as applicable to the facts found in the record, are stated herein after in the order that points depended on by appellants for a reversal are presented to our consideration. All property acquired during the existence of the marital relation is prima facie community property, whether the conveyance or transfer of it be in the name of the wife or husband, and it devolves upon the wife to prove that property conveyed to her husband or to herself, without designating it as her separate property, has been purchased with her separate means. Edwards v. Brown, 68 Texas, 330; Parker v. Coop, 60 Texas, 112; King v. Gilleland, 60 Texas, 271.

It has also been settled by a long line of decisions of this State, that as against a purchaser for value from the husband, or through an execution against him, without notice of the right of the wife, she will not be permitted to hold land upon proof that it was bought with her separate means or was a gift to her from some other person, unless there be recitals in the conveyance to her that will put such purchaser upon inquiry as to her separate interest in the property; and this rule is enforced although the land be conveyed to her during coverture. Or in other words, the fact that she is married, and the deed is made to her alone without a recital that it is intended for her separate use and benefit, does not destroy the presumption that all property acquired during the coverture is community estate. Cook v. Bremond, 27 Texas, 459; French v. Stumberg, 52 Texas, 109; Parker v. Coop, 60 Texas, 112.

This rule proceeds upon the principle, that the purchaser in good faith is authorized to rely upon the deeds to property showing the real title, and he is protected rather than the person who permits his or her own property to stand in the name of some other person. But in the case of

an attaching creditor of the husband, who through his attachment has acquired an apparent lien upon land which has been purchased with the separate means of the wife, a position is not occupied that would preclude the wife from proving the facts and establishing her right to the property. This question has been fully considered and clearly decided in several opinions of our Supreme Court. Parker v. Coop, 60 Texas, 114; Grace v. Wade, 45 Texas, 525; Oberthier v. Stroud, 33 Texas, 522; Blankenship v. Douglas, 26 Texas, 227.

The subject is thoroughly discussed by Judge Stayton in Parker v. Coop, and following the case of Blankenship v. Douglas, it is held, that an attachment lien upon the land in the name of a debtor is subject to every equity which existed against the land in the hands of the debtor at the time of the levy of the attachment.

The proof in this case shows that at the time the attachment was levied upon the property in controversy, the wife had an equitable title to the land, having paid $600 of her separate estate as a cash payment on the land, and having given her notes for the balance of the purchase money. The attachment lien did not attach to any interest in the land whatever, and the subsequent foreclosure of the lien on the husband's interest in the land did not affect the title to the land, as he had no interest to which the lien had attached. The fact that the wife bought the land on a credit can not affect her interest, so far as appellants are concerned. To remove the presumption that the property was community, proof of her equitable title in the land was sufficient to entitle her to the relief that she sought at the hands of the court, to-wit, the protection of her right of separate property. It is shown by the proof that it was expected to pay the purchase money notes with money that Mrs. Josey, the mother of Clara Kahn, would give her. The questions to be determined by the jury were, whether the property was bought by the wife or by the husband for her, and whether the money paid on the land was her separate means. She had the right to buy the property either for cash or on time, and the fact that she did not pay for the land in cash would not subject the land to which she had an equitable title to an attachment by a creditor of her husband. Ullman v Jasper, 70 Texas, 452; Schuster v. Bauman, 79 Texas, 180.

The evidence in this case showed that the husband was insolvent, and the plain inference is that the wife was looked to for payment of the notes, otherwise it would have been unnecessary for her to sign the notes; and if the land in controversy was paid for with the separate means of Mrs. Kahn, or was purchased for her by her husband for the purpose of discharging a debt which he owed her, it became her separate property. Mitchell v. Mitchell, 80 Texas, 101; Mitchell v. Mitchell, 84 Texas, 304. And in the last case it was held, that " evidence reasonably satisfactory

to the jury was sufficient to overcome the presumption carried by the deed, that the lots were community property."

It is contended by appellants, that the trial amendment sets out a different title to the property than that which existed at the time of the writ of attachment. We do not think this position is well taken or tenable. Mrs. Kahn in her original petition claimed to have equitable title in the lots levied on, because she had paid $600 in cash of her separate means for the lots and had given her promissory notes for the balance.

Can it be doubted that if the notes had become due while the litigation was pending between her and appellants, and she had paid them off and gotten a release of the vendor's lien from the owner of the legal title, that she could have set up this fact by amendment, and have obtained the benefit of it on the trial? Or can it be doubted that she could have amended her original petition and have shown that pendente lite the payee of the notes had made her a gift of the notes and a release of the vendor's lien? Then the same principle would prevail if her mother made the gift to her. This does not, we believe, come within the rule as to title acquired after the institution of suit. If appellee Mrs. Kahn depended upon after-acquired title, she made it available by setting it up in her trial amendment, by which she could have been subjected perhaps to payment of all costs to the time of filing the amendment. Collins v. Ballow, 72 Texas, 330; Ballard v. Carmichael, 83 Texas, 355.

The right of action in this case was given because the wife had bought the land with her separate means, and the gift by the mother to the appellee of the notes and a release of the superior title that had by purchase vested in her, was nothing but a strengthening of the right she had before. Proof that the cash payment had been made out of the separate means of the wife authorized the wife to maintain her suit, and the paying off of the purchase money notes merged her equitable into a legal title. Pitts v. Booth, 15 Texas, 453.

The equitable title in the land was in Mrs. Kahn when she instituted her suit, and upon that she could have maintained her suit, and the after acquirement of the legal title did not set up a new cause of action. A plaintiff who at the time of instituting suit has a good title has a right to protect himself by buying up an outstanding title, even after issue joined. Martin v. Parker, 26 Texas, 255.

In the case of Ballard v. Perry, 28 Texas, the plaintiff had only the equitable title in the land at the time of institution of the suit, and during its pendency obtained a deed from his vendor reciting the full payment of the purchase money and vesting the legal title in plaintiff; and Judge Moore says, " Nor is there any valid objection to the introduction of the legal title acquired by the plaintiff after the commencement of his suit, in conformity with his pre-existing equitable right." The same

doctrine is held in Walker v. Emerson, 20 Texas, 706, and in Keyes v. Railway, 50 Texas, 169.

In Ballard v. Carmichael, 83 Texas, 359, Judge Gaines says, on the same point: "Our system of pleading permits the utmost liberality of amendment, and it has been too often ruled, that the plaintiff may at any time before the trial abandon the old and set up by amendment a new cause of action, to require the citation of authority to support the proposition; and we see no reason why a plaintiff may not set up new grounds of recovery which have occurred since the beginning of his suit, without abandoning his original cause of action."

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered November 29, 1893.

Chief Justice James did not sit in this case.

ON REHEARING.

FLY, Associate Justice. — The real contention in appellants' motion for a rehearing seems to be, that if a married woman buys land, paying part of the purchase money with her separate property, and executes notes for the balance, that she can not by paying off her own notes with her own money obtain title to the land, but would only own an interest in the land equal to the amount she paid in cash. The only question to be determined was as to whether the land was purchased in good faith by the wife, and she has the same right to purchase land on credit as she would have to buy it for cash. There can be no reason for establishing different rules on the subject. We have seen no case that holds, that when a married woman buys land and pays for it partly in cash, that in order to make the land her separate property she must have a reserve fund with which to cancel the future indebtedness. In this case the deferred payments have been settled by the mother of Mrs. Kahn and a gift of the whole indebtedness made to her. According to the proof in the case not a dollar of Kahn's money has gone to pay for the land in controversy, but it has all come from his wife. Appellants levied on, if anything, a possible interest that the husband might acquire if he had paid for the land, instead of his wife; but before the trial the wife actually paid the whole of the purchase money, and had a perfect title to her land.

In the case of Schuster v. Bauman Jewelry Company, 79 Texas, 180, the facts in regard to one of the tracts of land in controversy were very like the ones in this case, and the court says: "That tract of land was purchased for and conveyed to her, and at the time of the purchase she paid $100 in money given to her by her mother. There were two deferred payments, each for $100, for which she and her husband gave their

promissory notes to the grantors in the conveyance. These notes were paid with money borrowed by her for that purpose. The money so borrowed was repaid with funds given by her mother after the deed was executed.''

In the Schuster case the wife did not have the money with which to pay the purchase money, but borrowed it, and afterwards repaid it with funds given her by her mother. In this case Mrs. Kahn paid out of her separate funds $600 cash, and gave notes signed by herself and husband for the deferred payments, and her mother paid off the purchase money notes and gave them to her daughter. As to the other tract of land mentioned in the Schuster case, the wife had made no payment, as it was shown that the pony was community property, and there was nothing to render the land separate property except the fact that Mrs. Schuster gave notes for the deferred payments, and the court held that this was not sufficient.

We are of the opinion that the motion for a rehearing is not meritorious, and it is overruled.

*Motion overruled.*

Chief Justice JAMES did not sit in this matter.

Writ of error refused by Supreme Court, February 10, 1894.